### Edward Macauley v. J. W. Cunningham.

1. Boundary Lines—*Location of—When a Question.*—The question as to which of two boundary lines fixed by different surveyors is the correct one is one of fact to be found from the evidence.

Trespass, for cutting timber. Appeal from the Circuit Court of Calhoun County; the Hon. George W. Herdman, Judge, presiding. Heard in this court at the November term, 1894. Affirmed. Opinion filed July 5, 1895.

T. J. Selby, attorney for appellant.

Frank A. Whiteside, attorney for appellee.

Mr. Justice Pleasants delivered the opinion of the Court.

This was an action of trespass against appellant for breaking appellee's close and cutting trees thereon. The issues were found for plaintiff, his damages assessed at $9, a new trial denied and judgment rendered upon the verdict; from which judgment this appeal is prosecuted.

From the pleadings and proofs it appears to be the common case of a disputed boundary. The place in controversy is a narrow strip of timber land on or along the north part

of the line between the northeast and northwest quarters of Sec. 29, T. 13 S., R. 1 west, in Calhoun county. Appellee had the title of record to the west half of the northeast quarter and appellant to the south ninety-five acres of the northwest. All, or nearly all, of both had been heavily timbered, but a portion of each had been cleared and in cultivation by its owner for many years. The line between them had never been determined by any express agreement of the adjoining proprietors nor ascertained by any survey made for them jointly, nor for either upon notice to the other, until the year before the alleged trespass here complained of was committed—which was in the fall of 1893. It appears that in 1849, Mr. Buchanan, then the county surveyor, for appellant's father, made a survey for the purpose of ascertaining the south ninety-five acres of the northwest quarter, and soon afterward he cleared, inclosed and put in cultivation a field, some fifty or sixty rods in width, north and south, in the southeast corner of the tract.

Appellant's claim to the place in controversy, which is a considerable distance north of this old field, is based on that survey and the alleged recognition by appellee and his ancestor of the line between the quarters made by it. He introduced testimony tending to show that the east fence of this field was started on the quarter corner so fixed, and built north, as far as it was built, on the line blazed by Buchanan; that some fourteen years ago appellee erected a fence on the east side of that field in place of the old one, and on the same line, and again, in 1892, built a new one clear through, from the south side to the north side of his land, substantially on the same line. Appellee had no recollection of refencing the east side of appellant's field, nor do we perceive any reason for his so doing. He denied that he ever knew or claimed to know where the true line was, until the last survey was made by Dr. Pulliam, the county surveyor, in 1892, or that before that time he ever, in any way, recognized any as the true one. On the contrary, when building his fence in 1892, he told the man who assisted him that he did not know it—that he believed it was further west, but would

have it surveyed soon, and would, probably, give him the job
of cutting the timber to that line, when so ascertained, and
building a permanent fence upon it; and as to this statement
he was fully corroborated by the man referred to, who was
a witness for appellant on this trial.    Appellee testified that
he had cleared, for pasture, out to the strip in controversy,
but not to what he believed to be the division line, and built
the fence to protect it; that it was built in a hurry and not
intended to be permanent; that it was not on the line of the
east fence of the old field, though near it; that he did not
use any part of that fence, but built the whole himself,
wholly on his own land and without regard to the true divis-
ion line.

It is not pretended that prior to this there was ever any
fence on or along this strip.    It was wild, vacant timber
land.    Both of the parties claimed to have cut upon it from
time to time, as they had occasion, and each denied that
he ever knew of the other's doing so.    All the possession,
therefore, that either ever had, was constructive only, and
extended only to the true division line.

Soon after building his fence, appellee procured Pulliam
to make the survey, of which he caused appellant to be noti-
fied.    The result of that survey was to place the south quar-
ter corner between these quarters sixty-three feet northwest
of the one claimed to have been located by Buchanan in
1849.    It appears that Jacob Wagel owned the north sixty-
five acres of the northwest quarter, between whose land and
that of appellee there had been a division fence ever since
1860; and that Pulliam's line north from the corner located
by him ran straight to and in the line of that fence.    It
also appears that appellee had cultivated land directly north
of the strip in question.

Between the dates of the two surveys mentioned, three
others were made touching this division line, of which two
were said to have corresponded very closely with that of
Buchanan, and the other with that of Pulliam.    The relia-
bility of each is more or less questioned by counsel on one
side or the other.    Dr. Pulliam was the only surveyor pro-

duced as a witness.   He described his method and gave his reasons quite fully in support of the accuracy of his work. Much of the testimony of the other witnesses, on both sides, however clear it may have been to the jury and trial judge, as presented to us is absolutely meaningless.   Illustrating from plats, in relation to points and lines of survey, fencing and occupancy, they have much to say of "here" and "there" which, to us, indicates no "where."   It is seen that Pulliam's division line gives to appellee, off the east side of what appellant claims, a strip of three rods or more in width at the south, and narrowing to the north.   This includes the place where the cutting complained of was done. It also gives a like strip off the south side to John Kamp, who has the record title to the north sixty acres of the south-west quarter.   A case like this, so far as it involves the reliability of these surveys between him and appellant, is also before us at this term, in which the jury, as here, found against this appellant.   It is the controlling question in this case, and a question for the jury.   We notice that one wit-ness testified to an admission by appellant that he had cut six or seven trees over the line, and the statement was not contradicted.

As to the law applicable to the evidence, it appears that the court below refused five and gave twenty-three instruc-tions as asked for defendant, not one of which is shown in the abstract.   Under the circumstances, we do not feel called upon to review the action of the court, to discuss the evidence or to interfere with the finding of the jury.   Judg-ment affirmed.